Please call the next case. The next case is 4-15-0059. We're going to be seeing Leon Smith v. McBride. The next debate is for the appellant, Warren Deans, to be acted to. May it please the members of the court, my name is Warren Deans. I'm appearing on behalf of Leon Smith, the petitioner of this case. This case involves a denial by the arbitrator on the commission of accident and causal connection. The petitioner here was a 26-year-old laborer who did only concrete work. Facts here show that in March, on or about March 11, 2011, he appeared at a prompt care, had some problems with his hands when he would not go to sleep at night, when he would go to sleep at night. And prompt care treated him with anti-inflammatory and braces. And he stated that he was okay after that. We'll get into that a little bit more. But the crux is that on July 19, 2011, he was hired by the respondent, Perry Broughton, to do concrete work and do curves. That's primarily what they did. The brief does show the type of work he did. He worked on the forms, which involved sledgehammers, approximately 15 pins, 3 foot long, that he'd have to hammer into the forms that are 10 foot long. He would have to do up to 70 swings for each pin. He would do 100 feet, which is 10 forms per day. He testified that he would do thousands of sledgehammer activity. He would also do concrete work with the tools, such as a mag, a Darby, and that would include great repetitive trauma to his hands. He stated this company was a go-go company. It really pushed him hard. In fact, he even said that he would be swinging pins while he was eating his lunch. Anyway, two months after he started the job, he began to complain of the pains and the numbness and the tingling in his hands. Let me back up a second and ask you a point of question. I'm sorry? Dr. Cohen noted that the claimant was diagnosed with carpal tunnel syndrome four months before he began working for the employer. Is that correct? It was a diagnosis, as I just said. And I'm going to get into that. But that was before he started working for the employer, right? I'm sorry? That was before. That's right. That's why. And I want to take a look at that. That's the point of this argument. The bottom line is that the repetitive trauma was even referred to in the arbitrator's decision as a cause of carpal tunnel. And the facts here are that the issues in the arbitrator's decision By the way, Dr. Maynard gave a deposition. And Dr. Maynard said that it was a causative factor. And Dr. Maynard based it on the repetitive gripping that he had to do was a contributing factor to carpal tunnel. But let's talk about the commission's decision and why they placed all the emphasis on March 11, 2011. If you look at the arbitrator's decision, first of all, the arbitrator did say that we know from the evidence that the work performed as a concrete finish runner was strenuous and repetitive and could, by all accounts, aggravate a carpal tunnel. So the arbitrator admitted that, okay? Then the rest of the whole decision is that the condition that we presented in this case is the same as in March 11, 2007. It seems as though everything else is ignored in terms of the medical and so on. And on the top of the decision, the arbitrator says, nowhere is there a history that he used the splints, got better, and got worse after working for the respondent. Can I ask a question, Mr. Danforth? I'm sorry? Are you suggesting that this man had a discreet injury while lifting steel forms on April 12, 2012? Yes. Or is your theory of recovery that he sustained carpal tunnels by reason of repetitive trauma? Which is it? The theory is that the work that he did, the extensive work, aggravated any underlying preexisting condition. And we cited the case law that the fact that there was a preexisting condition should not defeat his claim. And I'm going to point out some of the things that I feel that prove that there was a severe aggravation after he was employed by the respondent. And again, the whole decision of the arbitrator is that the condition after April 12th, and by the way, I didn't go over that, but April 12th is the day when it manifested itself, when he was picking up the heavy forms and electricity shot through his arms and hands. And he went directly to the prompt care and received treatment, then went, got referred for EMG, then went for surgery, and then he was operated on. So you're alleging, you're arguing that the April 12th, 2012 incident aggravated the carpal tunnel syndrome, correct? It aggravated it, yes. Who's Dr. Cohen? Okay, I'm going to go over to Dr. Cohen. The arbitrator said in the decision, we'll adopt the opinion of Dr. Cohen. Dr. Cohen is a doctor, IME doctor for the respondent in Chicago, who did a records review only, and he concluded that the condition after April 12th was the same as it was in March of 2011. And Dr. Cohen said he based his opinion on a video, and I objected to his opinions on causal connection because the video was never, ever shown to me. It was never shown to anyone. And that, to me, would have stricken his decision. And also Dr. Cohen said he didn't know how many times he swung a hammer. He didn't know about the work he did. But he had a video, but I don't know what was on the video. But yet the arbitrator adopted Dr. Cohen's opinion. Well, is that the only thing in the record here that weighs against the claimant? Let me ask you this. April 12th, 2012 treatment record from Priority Care, Dirksen notes that the claimant reported experiencing pain, numbness, tingling in both of his hands for the past year at night at work. Is that correct? You're talking about the March 11th? I'm talking about April 12th treatment notes from Priority Care, Dirksen. That's right. And if I may go on for some more history. Well, how does that help your case? Well, let me present this to you. First of all, here's the points that I believe that the arbitrator missed. The inferences of the repetitive trauma alone, along with the April 12th incident, is strong enough to enforce us to say that this was an accident that manifested in itself on that date. Okay? But furthermore, the petitioner testified that after March of 2011, he was okay. He was fine. And they said, well, if you're not fine, go to an orthopedic surgeon. He didn't call anyone after that. He just went to work on April 12th. So certainly the inference here is that he's okay. Then the history. Well, why is he telling the treatment, the primary care office on April 12th, 2012, that he's had this pain going on for the past year if he's okay? That's okay. That's okay because he did have a preexisting condition. And if you look in Dr. Meander, he told Meander it was for the last eight months. Right. And also, if you look at the April 12th visit, the symptoms are made worse by overuse. The symptoms are worsening. That's in the record. On April 30th, he went to the prompt care. And again, the reference there is that he had a sudden onset of constant, moderate lateral hand problem with the symptoms are worsening. Then he goes to Dr. Meander, and he reports in the history, he has been getting progressively worse. It bothers him significantly. What about the commission doesn't believe it? Well, if they don't believe it, then I guess they don't believe it. I'm just telling you that the way I look at this case is to look at the, to say that it was the same in March 11th is erroneous. Let me just document what was said in March 11th. Meander wasn't even aware that this man had been diagnosed with carpal tunnel syndrome before he even began working for this employer. He didn't even know it. That's true. Well, if he didn't even know that the guy had prior carpal tunnel syndrome, how can he suggest that the work was a causative factor as opposed to merely a natural progression of that which existed already? I guess he just looked at the facts. If you look at the facts of this horrible, strenuous job this man did for eight months, and you say, oh, he didn't do anything different, he didn't aggravate himself, I would question that. Because here's what he said on March 11th. Here's the symptoms. Here's what the history is on March 11th. He will have transient numbness and tingling in the hands. Transient means temporary. Transient means not permanent. And it says here the character of symptoms is pain, associated symptoms transient and positional numbness and tingling. Not now. That's the only history we have on March 11th. Now, let me go one step further in the decision. So the arbitrator says and concludes, well, we didn't have a prior EMG. They're saying we have no history. Well, how could there be any history from any doctors? They never went to the doctor after March 11th. And so I say you have to go by the history that we have here. If you put the pieces of the puzzle together, what does it tell you? And let me just say this. Let's say that I was up here arguing for a case on March 11th, 2011, and the counsel here was defending it. Do you think that he wouldn't bring up this eight months of repetitive trauma? So what I'm saying is the commission decision here telling us that he has no history of worsening is incorrect. The commission decision relying on Dr. Cohen, who has a video he never even showed anybody, and he doesn't even know what he did, to me is not correct. The history here ignoring the April 12th electricity going into his hands is not to be eliminated. And as I pointed out in my arguments of the case law, that just because there is a preexisting condition, it does not break the causal connection of the accident. And here's one of the cases I mentioned, the fact that the claimant may have a preexisting condition does not include an award of benefits upon her showing her condition was aggravated or accelerated by her employment. And that's the general electric case. And further case here, Benjamin Ferkey, which I pointed out was strictly on point, was a reversal of the commission decision. And they found it was against the manifest within the accident evidence. And they said under the act, commission compensation may be awarded for a claimant's condition of ill-being even though the condition of his and her employment do not constitute the sole or even the principal cause of the injury. So I guess basically all I'm saying is this. You got an extremely strong history of repetitive trauma, and you have a causal connection by Dr. Meander. You've got an extremely questionable opinion from Dr. Cohen. And there's no way to go back to March 11th and say, well, maybe it was there, maybe it wasn't. The client said he got better. So you have to look at the facts. And I say that they would support accident and causal connection. Thank you, counsel. We have time on the floor. Counsel, may I respond? Good afternoon. May I please have the floor, counsel? Ken Beame, I represent the respondent. These same arguments that you heard this afternoon were the identical arguments that the arbitrator heard, that the unanimous commission, including the employee representative heard, and the circuit court heard. And they all came to the conclusion that Petitioner failed to meet his burden. You correctly stated that 10 months before Petitioner came under respondent's employ, he had carpal tunnel symptoms. Four months before he came under his respondent's employ, he was diagnosed with carpal tunnel symptoms. Now, that would not necessarily preclude him from recovery in the proper case, because he's citing the well-settled law that the employer takes the employee as they find them. And if, in fact, there was an aggravation of a preexisting condition, that would not preclude recovery, correct? You know, the issue is what effect, if any, did his employment with respondent have? Right, that is the issue. So, I mean, you're not disputing. It could have, notwithstanding the history, he could still recover in the proper case. In the proper case, he could, correct. That is possible. So why is this not the proper case? This is not the proper case, because the issue is what effect did his employment with respondent have on this preexisting condition? That's the issue. We talk about pieces of the puzzle. This is a huge piece. Petitioner secured the evidence deposition of Dr. Meander, looking for that piece of the puzzle, but for some reason, Dr. Meander didn't know any of the facts. He didn't know when he started working for the respondent. He wasn't aware that he had preexisting carpal tunnel syndrome. Dr. Meander could not address this big piece of the puzzle, because he was not asked to address it. The only doctor that was asked to address it was Dr. Cohen. Dr. Cohen testified that, I don't care what he did for respondent. If you assume what he did for respondent was a job that was a risk factor for carpal tunnel syndrome, it's not relevant. The job video, it's not relevant. He's a 26-year-old with complaints of carpal tunnel syndrome 10 months before his employment with respondent. He did exactly what Dr. Cohen thought he would do. He ran the natural progression. He ended up with surgery, which he would have done regardless of whether he worked for respondent or not. That's the issue not addressed. That piece of the puzzle was not addressed by Dr. Meander. It was addressed by Dr. Cohen. As far as petitioner's testimony, the commission correctly decided that issue. They looked at it, and he testified that, I got better. It wasn't until I started working with respondent I got better. Well, if you look at the contemporaneous histories of the medical records, there's no support to that, and there's layers of it. It's at the visit at Express Care in April, and then it's with Dr. Trudeau who has a very long narrative about his complaints. He's had these problems for a year. There's nothing in the medical records to support petitioner's testimony that they went away and reoccurred. So the commission had more than enough evidence to support their decision, and it's not contrary to the manifest way of the evidence. Thank you. Thank you, counsel. Counsel, you may reply. Basically, simple responses. Dr. Meander testified that he doesn't know how long it takes to cause carpal tunnel, but Dr. Meander testified that the work that he did, in his opinion, was a contributing factor. And he said, I think that the grip required to hold on those instruments is probably a contributing factor to the carpal tunnel syndrome. So I'm not really disagreeing with counsel. Where the cause of the carpal tunnel started way back before, and by the way, this tenant worked for Broughton for two or three weeks before. But I'm saying that the tremendous amount of aggravation that he went through, and the accident itself on April 12th, seems to be classic carpal tunnel manifesting itself and resulting in the final symptoms. And the worsening is throughout the medical records, as I pointed out. So I think the commission's decision saying that there's no worsening is incorrect. And by the way, how are we going to go back and guess what happened on March 11th, 2011? Are we just going to guess that he was symptomatic, ready for surgery then? If you look at the piece of the puzzle, I think this work that he did certainly is the aggravating factor that, you know, was the factor that broke the chain and made him go for the surgery. Thank you, counsel, both for your arguments in this matter. We will be taking under advisement a written disposition shall issue.